# H. L. Cooper and D. Ridgway Burr *v.* Rose Valley Mills, Benjamin C. Potts, Appellant, and William H. Osborne, Attorney in Fact for the Heirs of Antrim Osborne, Deceased.

*Landlord and tenant—Mortgage of leasehold—Corporations—Act of April* 27, 1855.

A corporation was in possession of a factory as a tenant, by virtue of an assignment to it of a lease. After the date of the assignment of the lease the corporation executed a mortgage of its leasehold, fixtures and machinery under the act of April 27, 1855, P. L. 369, to the landlord to secure rent in arrears. The property of the corporation was subsequently sold at a receiver's sale. *Held,* that as the corporation was liable for the rent, and as the property was subject to distress for the rent in arrears, the mortgage did the creditors of the company no harm, and the claim for rent should be sustained as a preferred claim.

Argued Feb. 14, 1896. Appeal, No. 152, Jan. T., 1896, by Benjamin C. Potts, from order of C. P. Delaware Co., Sept. T., 1893, No. 11, dismissing exceptions to auditor's report. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report distributing fund raised by receiver's sale of the property of Rose Valley Mills, a corporation.

W. Roger Fronenfield, the auditor, found the facts to be as follows :

The attorney for Wm. H. Osborne, attorney in fact for the heirs of Antrim Osborne, deceased, asks that the mortgage of $2,500 on the leasehold and machinery of the Rose Valley Mills be paid as a preferred claim out of the fund before the balance

is distributed, and asks the auditor to make a partial report, passing upon the merits of the claim.   The Rose Valley Mills, a corporation of the state of Pennsylvania, under the act of 1874 made an assignment, in trust, for the benefit of its creditors, on March 7, 1892, to Horace P. Green, Esq., who accepted the trust and proceeded to settle up the assigned estate.   The heirs of Antrim Osborne had a preferred claim against the assigned estate for rent, and, as all the other creditors had been given security or were about to release their claims on the estate and consent to a reassignment, proposed on April 24, 1893, to release their claim and consent to a reassignment of the property to the Rose Valley Mills, provided the Rose Valley Mills would pay them all their claim for rent except $2,500 to May 1, 1893, and accept a lease for the Mills from May 1, 1893, to January 1, 1896, at $3,000 per annum and after a reconveyance, to secure the remaining $2,500 due the owners of the property by a mortgage on the machinery.   On April 29, 1893, before the reassignment, this proposition was accepted by the stockholders of the Rose Valley Mills, at a special meeting called for the purpose, who authorized and directed the officers of the company to execute and deliver a lease for the Rose Valley Mills, and to execute and deliver a mortgage to the heirs of Antrim Osborne, deceased, for $2,500 on the leasehold and machinery of the Rose Valley Mills to be thereafter reconveyed from the assignee.   On June 5, 1893, a decree of reconveyance was filed and on June 6, 1893, a deed of reconveyance from Horace P. Green, assignee to Rose Valley Mills, was executed, and on June 12, 1893, it was recorded in deed book H, No. 8, page 517.   On the same day, in pursuance of the resolution of the stockholders of April 29, 1893, the Rose Valley Mills leased from the heirs of Antrim Osborne, deceased, the mills, with the machinery, water power, etc., from May 1, 1893, to January 1, 1896, at $3,000 per annum, payable quarterly, the first payment to be made on August 1, 1893, which lease was recorded on June 12, 1893, in deed book H., No. 8, page 519.   On the same day the Rose Valley Mills, in pursuance of the above mentioned resolution, executed and delivered a mortgage for $2,500 to Wm. H. Osborne, attorney in fact for the widow and heirs of Antrim Osborne, deceased, on the leasehold, fixtures and machinery belonging to the Rose Valley Mills, which mortgage

was, on June 12, 1893, recorded in mortgage book R., No. 7, page 187, etc. Mr. Henry Riddle was appointed receiver of the Rose Valley Mills on August 28, 1893. The sale by the receiver of the mortgaged leasehold, fixtures and machinery raised the money, now being distributed, which is more than sufficient to pay the mortgage, all preferred claims and the costs. The mortgage was given for the purpose of procuring a release and having the property reassigned, so that the Rose Valley Mills could resume business, and was not given for the purpose of forcing the Rose Valley Mills into insolvency. Had the Rose Valley Mills been called upon to pay its debts at the time the mortgage was signed, it could not have paid them. Its debts at that time were practically as great as when the receiver was appointed. There was paid to the heirs of Antrim Osborne by the receiver under a decree of the court made on February 12, 1894, the sum of ($1,749) seventeen hundred and forty-nine dollars, ($1,000) one thousand of which was paid for the time the receiver was in possession of the property and the balance for rent distrained for before the receiver was appointed, together with the costs. This sum was paid for rent accrued since the mortgage was signed, and not on account of the mortgage, or on account of the rent secured by the mortgage. The receiver remained in possession of the Rose Valley Mills until December 1, 1893, although there was no agreement for rental and compensation between him and the heirs of Antrim Osborne. The receiver did not operate the mill, but had the keys and full possession of it and had the property of the Rose Valley Mills stored in it, and possession was not taken by the landlord until December 1, 1893, except a possession incident to a distraint for rent. Having the machinery stored in the mill was of advantage, both to the landlord and to the Rose Valley Mills. The machinery is still in the mill, having been purchased at receiver's sale by John L. Grim, whose wife is one of the heirs of Antrim Osborne.

The auditor recommended that the claim of Wm. H. Osborne, attorney for Osborne's heirs, should be paid in full.

Exceptions to the auditor's report were dismissed by the court.

*Errors assigned* were in dismissing exceptions to the auditor's report.

*Isaac Johnson*, for appellant.—The facts do not support the finding that the relation of landlord and tenant had arisen prior to the making of the mortgage and lease in question. Coates and Potts were tenants at will under an unperformed contract to make a lease; but the company was in possession as a stranger. Not even the relation of the debtor and creditor existed as to it: Rosenburger v. Hallowell, 35 Pa. 369; Howard v. Shaw, 8 M. & W. 118; Winterbottom v. Ingham, 7 Queen's Bench, 611.

An implied contract for use and occupation only, arose from the use of the occupant and the consent of the owner: Grove v. Barclay, 106 Pa. 155; Sietzinger v. Alspach, 42 L. I. 68.

Corporations created by statute must depend, both for their powers and the mode of exercising them, upon the construction of the act itself. They derive all their powers from the act creating them, and are capable of exercising their faculties only in the manner the act authorizes: Fowler v. Scully, 72 Pa. 461; Com. v. Bringhurst, 103 Pa. 137; Pittsburg etc. R. R. v. Allegheny, 63 Pa. 126.

The property of a corporation is a trust fund for the payment of its debts: Potts v. Wallace, 146 U. S. 689; Lane's App., 105 Pa. 49; Bell's App., 115 Pa. 88; Bank v. Gillespie, 115 Pa. 564; Morawetz on Private Corps. 803.

*E. H. Hall*, for appellees.—The corporation being in the hands of an assignee and desiring to get a reconveyance, the securing of its debts for rent was such as is contemplated within the general powers of the corporation: Manhattan Hardware Co. v. Phalen, 128 Pa. 110.

To disaffirm this mortgage now when there is no longer an opportunity of obtaining any other security for what was undoubtedly a preferred lien, would be unconscionable: Gordon v. Preston, 1 Watts, 385.

PER CURIAM, March 9, 1896:

The findings of fact made by the learned auditor seem to us to justify the decree appealed from. He found from the evidence before him that the corporation, the Rose Valley Mills, was in possession of the factory as a tenant by virtue of an assignment to them of the lease of Coates and Potts. This being so, it was liable for the rent either to the landlord or to Coates

and Potts, its assignors.   Moreover, the property upon the premises belonging to them was liable to distraint upon a landlord's warrant issued against Coates and Potts.   The claim for rent was therefore a preferred claim and the mortgage worked no injury to other creditors.   Neither of the assignments of error is sustained.

The judgment is affirmed.